IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| JAMES L. COLLINS | ) |
| Plaintiff, | ) ) ) |
| vs. | ) Case No. 11-1219-CV-W-ODS ) |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | ) ) ) |
| Defendant. | ) ) |

## **ORDER AND OPINION AFFIRMING COMMISSIONER'S FINAL DECISION DENYING BENEFITS**

Pending is Plaintiff's appeal of the Commissioner of Social Security's final decision denying his application for disability and supplemental security income benefits. The Commissioner's decision is affirmed.

## I. BACKGROUND

Plaintiff was born in February 1967, completed high school, and has prior work experience as a machine box maker, welder, forklift operator, and production machine operator. He alleges he became disabled on May 24, 2007 and sought disability and Supplemental Security Income benefits due to a combination of a foot injury, residual effects of a gunshot wound and an auto accident, and headaches (some of which are related).[1] The Record reveals that Plaintiff went to Truman Medical Center ("TMC") on May 25, 2007, after being shot with a shotgun. He was noted to have wounds to his right eye, left check, and right upper arm and lost all or most of his sight in his right eye. He also complained of headaches. R. at 278-84. He was apparently treated and

---

[1] Plaintiff also alleged he suffered from post traumatic stress disorder. The ALJ determined this was not a severe impairment because it did not cause more than a minimal limitation on Plaintiff's ability to perform work-related activities. Plaintiff does not challenge this conclusion, so the Court has not discussed this issue.

released shortly thereafter. R. at 36. Plaintiff returned to TMC in October 2007 complaining of pain in his right eye. A CT scan of his head and orbital zone revealed the gunshot wound but revealed no intracranial hemorrhage, abnormal fluid collection, or other cause for concern. R. at 303-06. Plaintiff was instructed to take ibuprofen. R. at 289.

Plaintiff went to Liberty Hospital in August 2009, again complaining of a headache. Another CT scan was performed, and the results again showed no evidence of intracranial abnormality. R. at 323. He was prescribed Benadryl to help him sleep, R. at 319, and advised to follow up with his regular doctor. R. at 331. There is no indication that he did so.

In October 2009, Plaintiff underwent another CT scan at Research Medical Hospital. Like the others, the results indicated no abnormalities. R. at 368. Later that month Plaintiff went to Dr. Louis Manuel for an eye exam. Plaintiff had normal vision in his left eye and severely diminished vision in his right eye. R. at 311-14.

In November 2009, Plaintiff was hit by a car and suffered injuries to his right foot. He went to Research Medical Center, where he exhibited a good range of motion throughout his body, including specifically his right hip, knee and ankle. X-rays revealed no fracture or other injury to the ankle, but revealed a broken fifth toe. R. at 342-44. An ensuing consultation indicated a possibility that Plaintiff's fourth was also broken and Plaintiff was then referred to an orthopedist. R. at 345-46. The orthopedist confirmed the fifth toe was broken, provided Plaintiff with a splint and advised him to remain off the foot. R. at 342-44. In January 2010, Plaintiff had a pin surgically placed in his toe and he was instructed to wear a boot. R. at 335-36.

The administrative hearing was held in March 2010. Plaintiff's counsel conceded that all available information suggested any issues related to Plaintiff's foot would be resolved within one year and so there was no medical basis for including any limitations related to his foot. R. at 31. Plaintiff testified that the aftereffects of the gunshot wound left him unable to lift weights and completely unable to lift weights above his head. R. at 42. He claimed to experience headaches twice a week (and sixt to ten times per month) that required him to lay down for one-half to three hours at a time. R. at 51-53. He was taking Vicodin, but it was in connection with his foot. R. at 43.

The ALJ elicited testimony from a vocational expert. The first hypothetical asked the VE to assume a person of Plaintiff's age, education and experience who could lift fifty pounds frequently and twenty-five pounds occasionally, needed to avoid working with dangerous machinery and heights and should not be required to climb ladders or steps. The VE testified such a person could not return to their past work (due to the need to avoid working with machinery) but could perform a variety of other jobs at the medium level of exertion, such an individual could work as a cleaner, kitchen helper. In the second hypothetical the ALJ asked the VE to assume the person was limited to light work, and the VE testified such an individual could work as a cashier, subassembler, and mail clerk. Finally, the VE testified if the individual was limited to sedentary work the person could work as an ampule sealer, document preparer, or order clerk. R. at 64-69. When asked to assume an individual who needed to lie down six to ten days a month anywhere from thirty minutes to four hours, the VE testified the person could not perform work in the national economy. R. at 69-70. In answer to a question from Plaintiff's counsel, the VE testified that if the person did not need to lie down but was "off task" due to headaches for thirty minutes to four hours for six days a month, the person could not work. R. at 70-71.

The VE found Plaintiff could lift twenty-five pounds frequently and fifty pounds occasionally, was unlimited in his ability to sit, stand, or walk, needed to avoid working around dangerous machinery or heights and should not be required to climb ladders or steps. In making this finding – and in finding Plaintiff's testimony not worthy of belief – the ALJ noted Plaintiff's lack of consistent medical treatment, the lack of objective medical evidence supporting the severity of his claims, his poor work history, and that fact that in November 2009 he was attending barber school – an activity the ALJ deemed inconsistent with Plaintiff's complaints. R. at 19.

## II. DISCUSSION

"[R]eview of the Secretary's decision [is limited] to a determination whether the decision is supported by substantial evidence on the record as a whole. Substantial evidence is evidence which reasonable minds would accept as adequate to support the

3

Secretary's conclusion. [The Court] will not reverse a decision simply because some evidence may support the opposite conclusion." Mitchell v. Shalala, 25 F.3d 712, 714 (8th Cir. 1994) (citations omitted). Though advantageous to the Commissioner, this standard also requires that the Court consider evidence that fairly detracts from the final decision. Forsythe v. Sullivan, 926 F.2d 774, 775 (8th Cir. 1991) (citing Hutsell v. Sullivan, 892 F.2d 747, 749 (8th Cir. 1989)). Substantial evidence means "more than a mere scintilla" of evidence; rather, it is relevant evidence that a reasonable mind might accept as adequate to support a conclusion. Gragg v. Astrue, 615 F.3d 932, 938 (8th Cir. 2010).

Plaintiff essentially invites the Court to reweigh the evidence, but the standard of review requires this invitation be declined. E.g., Buckner v. Astrue, 646 F.3d 549, 556 (8th Cir. 2011). The ALJ is the factfinder, and the only question is whether there is substantial evidence to support those findings. The Court concludes there is. Plaintiff alleges the RFC is not supported by competent medical evidence and that the ALJ should have solicited additional information to develop the Record. This is simply not true: there was medical evidence in the Record, and the ALJ considered it – along with all the other evidence in the Record – in ascertaining Plaintiff's RFC. The fact that there was not evidence to support Plaintiff's claims does not mean the Record was not adequately developed. To the extent Plaintiff contends the RFC was wrong for failing to incorporate his subjective complaints, the Court notes the ALJ conducted a proper credibility analysis; consequently, the Court is not empowered to substitute its assessment of Plaintiff's credibility for the ALJ's.

### III.  CONCLUSION

For these reasons, the Commissioner's final decision is affirmed.
IT IS SO ORDERED.

DATE: April 26, 2013

/s/ Ortrie D. Smith
ORTRIE D. SMITH, SENIOR JUDGE
UNITED STATES DISTRICT COURT

4